IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES EDMONDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:02-CV-1282-F |
| | ) | |
| CHAMBERS COUNTY SHERIFF, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this *pro se* action grounded on 42 U.S.C.§ 1983, James Edmondson, now a state inmate ("Edmondson"), alleges that law enforcement officers violated his constitutional rights during searches and seizures following the checkpoint stop of his wife's car. Edmondson "is currently serving a sentence that is irrelevant to the facts in this case."[1] After due consideration of all evidentiary submissions, arguments, and applicable law, the court concludes that summary judgment is warranted for all defendants.

**I.   PROCEDURAL BACKGROUND**

While incarcerated in the Montgomery County Detention Facility, Edmondson filed this Complaint on November 25, 2002, against law enforcement officers who are identified properly as Chambers County Sheriff Sid Lockhart and Sgt. Mike Parrish along with Chambers County Multi-Jurisdictional Drug Task Force Agent Aris Murphy and Investigator

---

[1] Plaintiff's Response to the Defendants Answer and Report at 2 ("Pl's Resp."  Doc. 39, March 26, 2004)

Clay Stewart.[2] Edmondson's failure to prosecute this action in compliance with the court's directives resulted in the dismissal of this action with prejudice on April 1, 2003. Edmondson appealed the dismissal, and on November 7, 2003, the U. S. Court of Appeals for the Eleventh Circuit vacated the dismissal and remanded this case for further proceedings.[3]

In an amended complaint allowed December 11, 2003, Edmondson –then residing at an Elmore County Correctional Facility[4] – corrected a misnamed defendant, added Chambers Co. Sheriff's deputy Jimmy Sanders as a defendant, and clarified his intent to sue each defendant in his official and personal capacity.[5]

---

[2]Edmondson designated *Chambers County Commissioner* as a defendant in the caption of his complaint but failed to reference him at all in the body of the complaint. Adopting this Magistrate Judge's *Recommendation*, on February 10, 2003, the court dismissed with prejudice any claims against this defendant prior to service of process, pursuant to 28 U.S.C. 1915(e)(2)(B)(i.). (Docs. 6, 9). In a *Motion for Leave to Amend the Original Complaint*, granted December 11, 2003 (Docs. 20, 21), Edmondson acknowledged the propriety of this dismissal.

[3]The dismissal *Recommendation* noted the return of an order mailed on February 10, 2003 as evidence of Edmondson's non-compliance with instructions to inform the court of any new address. An Order on February 24, 2003, set a February 28 deadline for him to supply his present address. Edmondson filed notice of his changed address on March 11, 2003, but the district court proceeded to adopt the dismissal recommendation entered on March 7. (Docs. 12, 14, 15). The appellate court determined: "[T]he district court dismissed Edmondson's complaint without first imposing lesser sanctions and did not make findings that lesser sanctions would be insufficient. Furthermore, the district court abused its discretion by dismissing Edmondson's case three weeks after Edmondson submitted his new address." (Doc. 22)

[4]Edmondson transferred on February 20, 2004, to Draper Correctional Facility. ( Doc. 35)

[5]Amendment to Complaint (Doc. 20); Edmondson also explained his designation of the sheriff as a defendant: "Sheriff Sid Lockhart for allowing his officers to act under color of the law and do so wrongfully. . ." (¶ 5).

In addition to answering the complaint with, *inter alia*, claims of immunities and jurisdictional defenses (Docs. 33 and 36), Defendants Lockhart, Stewart, Sanders, and Parrish filed on February 23, 2004, and Defendant Murphy on February 25, 2004, special reports and supporting evidentiary materials which addressed Edmondson's claims for relief. On March 26, 2004, Edmondson filed his response to the special report in accordance with another scheduling order.[6] The parties having been advised of the court's prerogative to treat the defendants' reports and the plaintiff's response as a motion for summary judgment and response, the court now deems it appropriate to do so. As now explained, the court concludes that the submissions demonstrate the propriety of summary judgment for the defendants.

## II. STANDARD OF REVIEW

To survive the defendants' properly supported motion for summary judgment, the plaintiff is required to produce some evidence which would be admissible at trial supporting his constitutional claim. Rule 56(e), *Federal Rules of Civil Procedure*. Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this standard, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.

---

[6]*See* scheduling orders, Docs.5 and 38.

*Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576 -1577 (11th Cir. 1990). A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987); *Wright v. Southland Corp.,* 187 F.3d 1287 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillian v. Johnson,* 88 F.3d 1573, 1584-85 (11th Cir. 1996) .

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

## III. RELEVANT FACTS

The incident underlying Edmondson's claim occurred on the evening of November 6, 2001, at County Road 388 and Judge Brown Road in Chambers County, Alabama, a scheduled checkpoint for Chambers Co. Sheriff's Sgt. Mike Parrish ("Sgt. Parrish")and Deputy Sheriff Jimmy Sanders ("Dep. Sanders"),[7] who were conducting authorized stops of vehicles traveling in each direction to check for driver's licenses and proof of insurance. After stopping the Camaro driven by Edmondson's wife Debra, Sgt. Parrish secured her driver's license, and instructed her to pull over to the side of the road after ascertaining that she had no insurance.

Edmondson maintains that his wife had the necessary "proof of insurance" and otherwise "denies all the statements made by officers (Defendants) as being untrue and fabricated." As it is duty-bound on this summary judgment submission, while viewing facts and inferences most favorably to Edmondson as the non-movant, the court has examined the record for evidentiary support which goes beyond conclusory allegations in search of "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). On the question of the purpose of the stop, for example, Edmondson

---

[7]An experienced police officer, Sgt. Parrish joined the Chambers Co. Sheriff's Department in 1999. Also a veteran officer now employed by the Lee Co. Sheriff's Department, Deputy Sanders served the Chambers Co. Sheriff for about two years. *Special Report* at 3-4, n.1,n.2.

provides no evidentiary support for his contentions that his wife had proof of insurance and that officers stopped her vehicle for ulterior purposes.[8]

Suspicious behavior by both the driver and Edmondson prompted Sgt. Parrish to summon Dep. Sanders for assistance.[9] Alerted by Dep. Sanders to "the butt of a gun in the back floorboard behind the driver's side", Sgt. Parrish ordered the Edmondsons to exit the car and stand at its rear.[10]

The officers conducted a pat-down search of husband and wife and Deputy Sanders stayed with them while Sgt. Parrish searched the vehicle for the weapons acknowledged by Mrs. Edmondson to be inside.[11] She was arrested for "failure to have a license to carry" a handgun retrieved near the driver's side, and officers also seized the handgun initially observed in the back floorboard. After confirming that the serial number on one of the handguns matched a stolen weapon, officers also charged Mrs. Edmondson with *Receiving*

---

[8]While acknowledging that his wife presented her driver's license upon request, Edmondson's affidavit makes no mention at all of the request for insurance proof; instead, he declares that Sgt. Parrish "informed [his wife] that he had asked her to pull over because her car had been involved in a methamphetamine bust a few days prior to this." Affidavit of James Edmondson ("Edmondson Aff.") ¶¶ 4-6.

[9]According to Sgt. Parrish, Debra Edmondson's "hand was trembling uncontrollably" when she handed over her license, and "Edmondson was sweating profusely even though it was a cool day, only about 50 degrees." Affidavit of Mike Parrish (Parrish Aff.), ¶ 4. Edmondson denies "sweating profusely" but explains that he "was feeling very sick." Edmondson Aff. ¶ 16.

[10]See Affidavit of Jimmy Sanders (*"Sanders Aff."*) ¶ 4 (" I walked over to the passenger's side of the vehicle and looked through the window. At that point, I observed the butt of a gun in the back floorboard behind the driver's seat. I raised up, looked at Deputy Parrish and mouthed the word 'gun' to him. I saw Deputy Parrish look into the window in the direction of the gun and he then instructed both subjects to exit the car.")

[11]*See* Edmondson Aff. ¶ 7; Parrish Aff.¶ 5;  Sanders Aff. ¶ 5.

*Stolen Property 2nd.* [12]

Sgt. Parrish's search of the vehicle produced not only the two handguns but also some ecstasy tablets, methamphetamine as well as manufacturing supplies and paraphernalia. From Mrs. Edmondson's purse officers retrieved other items used for the manufacture of methamphetamine along with $473 in currency. According to Sgt. Parrish, Mrs. Edmondson claimed ownership of everything in the car and denied her husband's knowledge.[13]

Defendants Clay Stewart and Aris Murphy, both investigators with the Chambers County Multi-Jurisdictional Drug Task Force, arrived to evaluate and photograph the evidence. Sgt. Parrish then subjected the Edmondsons to a more extensive search than the initial pat-downs, finding in Mr. Edmondson's front pocket $543.00 cash; the parties dispute Edmondson's statements regarding his ownership of this money. According to Sgt. Parrish, overheard by other officers, Edmonson denied any knowledge and insisted that the officer take the cash.[14] Edmondson declares that Sgt. Parrish "took ...my money out of my wallet" rather than from his pocket and told him to contact Inv. Stewart if he wanted the money

---

[12] See Special Report (Doc. 34), *Ex. 1* (Incident Offense Reports); *Ex.3* (Arrest Report).

[13] Defendants Stewart and Sanders overheard Mrs. Edmondson's claim of ownership. *See* Affidavit of Clay Stewarat ("Stewart Aff.") ¶ 4; Sanders Aff. ¶ 7. Moreover, the plea agreement pursuant to which Mrs. Edmondson plead guilty on November 3, 2003, to possession of a controlled substance recited: "all items seized in connection with this case shall be condemned and forfeited to the investigating agency for proper disposal or destruction." Thus, all cash seized from the Edmondson and all weapons, drugs, and paraphernalia seized from the car and her purse have been forfeited to the Chambers Co. Sheriff's Department. *See Ex. 5* and *Special Report* at 9 (Doc. 34).

[14] *See* Ex. 4 (Sealed Evidence Bag); Stewart Aff. ¶ 6; Sanders Aff. ¶ 9; Affidavit of Aris Murphy ("Murphy Aff.") ¶ 6.

returned.[15]

Contradicting Edmondson, the evidence establishes that Sgt. Parrish included the cash taken from him when he inventoried all other items seized during this incident.[16] Edmondson was not arrested and, while officers impounded the car, he purportedly declined an offer of a ride and walked instead toward the Lee County line.[17] Disputing all four officers' testimony, Edmondson maintains that Defendant Murphy tossed to him his cell phone and "told [him] to start walking before he locked [him] up too."[18] Drug Task Officers transported Mrs. Edmondson to their office and later for booking in the Chambers County Detention Facility.

### IV.   DISCUSSION

**A.      Sheriff Lockhart**

---

[15]See Edmondson Aff. ¶¶ 14, 22.

[16]See *Pl.'s Resp.* At 2 ("...officers took his money and never reported the money until a suit was filed against them."); *Parrish Aff.* ¶ 8 ("I then conducted an inventory of the drugs, drug paraphernalia and money, and bagged, sealed, and labeled the evidence."); Special Report, *Ex. 4* (sealed evidence bag)

[17]*See* Parrish Aff. ¶ 5; Stewart Aff. ¶ 7; Sanders Aff. ¶ 11; Murphy Aff. ¶ 7.

[18]Edmondson *Aff.* ¶¶ 23-25. Defendant Murphy's testimony did not reference a cell phone:

> Investigator Stewart offered a ride to Mr. Edmondson so that he could be taken to a telephone, as the car belonging to Ms. Edmondson was being impounded. I recall Mr. Edmondson stating "I do not want a ride from y'all, I just want to get to Lee County." Someone responded that "Lee County is that way" as we were all standing at the Lee County line. Mr. Edmondson then began walking away from the scene towards the county line despite our offer to transport him to a telephone to obtain a ride." Murphy *Aff.* ¶ 7.

The single allegation against Sheriff Lockhart – made in the amended complaint docketed just over a year after the complaint – is that he "allow[ed] his officers to act under color of the law and do so wrongfully." Edmondson proffers no evidence to dispute Sheriff Lockhart's sworn testimony denying any familiarity with or personal knowledge of the incident in controversy and further denying any direct control or authority over the drug task force officers involved.[19] The doctrine of *respondeat superior* is not applicable to actions filed under 42 U.S.C. § 1983. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978); *Greason v. Kemp,* 891 F.2d 829, 836 (11th Cir.1990). Accordingly, this action is due to be dismissed against the Sheriff.

### B.     Defendants Parrish, Sanders, Stewart, and Murphy

The undisputed factual basis for the legal claims in this action is stated succinctly by Edmondson:

> On November 6, 2001 the Plaintiff, a passenger in his wife's automobile, was deprived of $543.00 in U.S. currency by officers armed with weapons. The Plaintiff was never charged with a crime, officers took his money and never reported the money until a suit was filed against them on November 25, 2002. The Plaintiff has construed this to be "armed robbery."[20]

Equally clear is the gist of his dual-pronged legal claim:

> The plaintiff has construed the checkpoint to be unlawful and the search and seizure to be a violation of the Plaintiff's fourth amendment rights. There is also the question of whether officers abused their authority by forcing the

---

[19]*Affidavit of Sid Lockhart*,¶¶ 1-2, Special Report (Doc. 34).

[20]*Pl.'s Resp.* at 2.

9

Plaintiff to walk back to another county.[21]

Indisputably, Sgt. Parrish searched Edmondson's person and seized $543 in the act Edmondson construes as armed robbery; whether he secured the money from his front pocket or from his wallet is irrelevant analytically. Since Edmondson attributes liability for this wrong to all the officers, all join Defendant Parrish in asserting as an affirmative defense Edmondson's lack of standing.

The defense is well taken on this evidentiary record and is determinative of the claim. Edmondson's conclusory allegation of ownership now is insufficient to create a genuine issue of disputed material fact in response to (a) the officers' affidavits of his specific denial of ownership when confronted with the money at the scene and his wife's specific claim of ownership, along with (b) the inclusion of this currency in the resulting criminal case to which Mrs. Edmondson plead guilty, and its consequent forfeiture to the Chambers Co. Sheriff's Department.

"Fourth Amendment rights ... are personal, and only individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of the government search." *United States v. Cooper*, 203 F. 3d 1279, 1284 (11th Cir. 2000). Notwithstanding his reference now to the money seized as his own, Edmondson does not dispute the officers' testimony of his wife's volunteered declaration of her own exclusive

---

[21]*Id.* at 3. As a remedy for the officers' conduct, Edmondson requests "$500 back that was took from me; 400 back that was took from my wife; 3000.00 for the car we had to replace; the car back that they took; 25 million dollars to punish them for what they did to me." (*Compl.* ¶ VI)

ownership to everything produced in the search, including the cash seized from her husband. Having created no factual dispute on her possessory claim, he lacks standing to challenge the officers' seizure of her cash and its subsequent inventory and forfeiture in a criminal case not involving him.[22]

With respect to Edmondson's second claim – that officers left him stranded after impounding his wife's car – even if the court found a genuine factual dispute in the conflicting testimony presented by the officers, the claim simply fails to rise to a constitutional violation. See *Courson v. McMillian*, 939 F. 2d 1479 (11th Cir. 1991).[23] Because the evidentiary submissions clearly establish that Edmondson's complaint states no constitutional claims for which relief can be given under 42 U.S.C. §1983, Defendants' asserted immunities require no examination.

---

[22]Assuming *arguendo* that Edmondson's present claim of ownership sufficiently creates an issue for the factfinder, summary judgment for the defendants would still be appropriate because the submissions establish no genuine issue of material fact about the constitutionality of the search and seizure incident to the checkpoint stop. *See Michigan Dep't of State Police v. Sitz*, 496 U.S. 444 (1990) (affirming constitutionality of sobriety checkpoint aimed at removing drunk drivers from the road is constitutional); *Delaware v. Prouse*, 440 U.S. 648 (1979)( upholding constitutionality of roadblock to verify license and registration); *Merrett v. Moore*, 58 F. 3d 1547 (11th Cir. 1995)(affirming constitutionality of license and registration checkpoint constitutional). After locating inside the car the handguns acknowledged by Mrs. Edmondson, along with drugs and paraphernalia, safety concerns reasonably dictated that Sgt. Parrish extend his initial pat down search to the more extensive search which yielded the cash in controversy. Whether the money came from Edmondson's front pocket or his wallet, Edmondson concedes that Sgt. Parrish removed the money "during a 'pat dow' or 'frisk' search . . . Officer Parrish removed the Plaintiff's wallet and opened it to inventory its contents." *Pl.'s Resp.* at 4.
.

[23]The court in *Courson* determined that no constitutional right existed as of May 1985 to have police transport a passenger home after the driver's arrest and impoundment of the vehicle. Diligent search of Eleventh Circuit case law since 1991 discloses no modification of this ruling.

ownership to everything produced in the search, including the cash seized from her husband. Having created no factual dispute on her possessory claim, he lacks standing to challenge the officers' seizure of her cash and its subsequent inventory and forfeiture in a criminal case not involving him.[22]

With respect to Edmondson's second claim – that officers left him stranded after impounding his wife's car – even if the court found a genuine factual dispute in the conflicting testimony presented by the officers, the claim simply fails to rise to a constitutional violation. See *Courson v. McMillian*, 939 F. 2d 1479 (11th Cir. 1991).[23] Because the evidentiary submissions clearly establish that Edmondson's complaint states no constitutional claims for which relief can be given under 42 U.S.C. §1983, Defendants' asserted immunities require no examination.

---

[22]Assuming *arguendo* that Edmondson's present claim of ownership sufficiently creates an issue for the factfinder, summary judgment for the defendants would still be appropriate because the submissions establish no genuine issue of material fact about the constitutionality of the search and seizure incident to the checkpoint stop. *See Michigan Dep't of State Police v. Sitz*, 496 U.S. 444 (1990) (affirming constitutionality of sobriety checkpoint aimed at removing drunk drivers from the road is constitutional); *Delaware v. Prouse*, 440 U.S. 648 (1979)( upholding constitutionality of roadblock to verify license and registration); *Merrett v. Moore*, 58 F. 3d 1547 (11th Cir. 1995)(affirming constitutionality of license and registration checkpoint constitutional). After locating inside the car the handguns acknowledged by Mrs. Edmondson, along with drugs and paraphernalia, safety concerns reasonably dictated that Sgt. Parrish extend his initial pat down search to the more extensive search which yielded the cash in controversy. Whether the money came from Edmondson's front pocket or his wallet, Edmondson concedes that Sgt. Parrish removed the money "during a 'pat dow' or 'frisk' search . . . Officer Parrish removed the Plaintiff's wallet and opened it to inventory its contents." *Pl.'s Resp.* at 4.
.

[23]The court in *Courson* determined that no constitutional right existed as of May 1985 to have police transport a passenger home after the driver's arrest and impoundment of the vehicle. Diligent search of Eleventh Circuit case law since 1991 discloses no modification of this ruling.

## V. CONCLUSION

Accordingly, it is the *RECOMMENDATION of the Magistrate Judge* that:

1. Defendant Sid Lockhart, Sheriff of Chambers County, be dismissed *with prejudice;*

2. Defendants' *motion for summary judgment* be GRANTED, and Judgment be GRANTED against the Plaintiff, James Edmondson, and in favor of all defendants: Chambers County Sgt. Mike Parrish, former Chambers County Sheriff's Deputy Jimmy Saners, Chambers County Multi-Jurisdictional Drug Task Force Investigator Clay Stewart and Agent Aris Murphy;

3. This case be dismissed with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further **ORDERED** that on or before October 27, 2005 the parties may file objections to the Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from

attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 13th day of October , 2005.

**/s/ Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE